IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Olivia W. Hagenbuch, Deceased,<br>William W. Hagenbuch, Substitute Plaintiff,<br><br>Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>Defendant. | C/A No. 3:03-4003-MBS<br><br><br><br><br><br>**ORDER** |

## **INTRODUCTION**

Plaintiff Olivia W. Hagenbuch ("Plaintiff")[1] brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, codified as amended at 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for a Report and Recommendation. On January 27, 2005, the Magistrate Judge filed a Report and Recommendation in which he found that the Commissioner's decision was not supported by substantial evidence and recommended that the Commissioner's decision be reversed and the case

---

[1] Plaintiff died on June 24, 2004, after the commencement of this action. On February 17, 2005, William W. Hagenbuch, Plaintiff's spouse, filed a "Motion to Substitute Party" as the plaintiff in this action pursuant to FED. R. CIV. P. 25 and 42 U.S.C. §§ 404(a)(1)(B) and 404(d)(1), which the court granted on March 22, 2005.

remanded for an award of disability insurance benefits ("DIB"). On February 11, 2005, Defendant Jo Anne B. Barnhart filed objections to the Report and Recommendation ("Defendant's Objections"). Plaintiff did not file a response to Defendant's Objections.

The Magistrate Judge makes only a recommendation to the court, which has no presumptive weight. Mathews v. Weber, 423 U.S. 261, 270 (1976). The responsibility for making a final determination remains with this court. Id. The district court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. Id. However, the court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

The court has thoroughly reviewed the record and agrees with the Report and Recommendation. The court concludes that the findings of the administrative law judge ("ALJ") are not supported by substantial evidence and that the decision of the Commissioner should be reversed and remanded for an award of benefits. See 42 U.S.C. § 405(g).

## I.  STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less

than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitute the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157, 1157-58 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that h[er] conclusion is rational." Vitek, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## II. FACTS

The Magistrate Judge thoroughly discussed the facts of this case in his Report and Recommendation. This court will, however, provide a brief outline of the relevant facts.

On December 28, 1999, Plaintiff filed for DIB alleging that she became disabled on February 24, 1997, due to long-term epilespy, cerebral arterial stenosis, anxiety, and depression. Her application was denied initially and again upon reconsideration. On January 13, 2003, a hearing was held before an ALJ, at which Plaintiff amended her onset date to December 12, 1999, when she was hospitalized with transient ischemic attack ("TIA") symptoms. The ALJ, in an partially favorable decision issued February 21, 2003, found that Plaintiff was not under a disability from the amended

onset date of December 12, 1999, to December 10, 2002, but that she became disabled on December 10, 2002, when she underwent brain surgery.

On November 24, 2003, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision for purposes of judicial review. Plaintiff commenced this action on December 19, 2003. After having reviewed carefully Plaintiff's medical and other records, the court concludes that the Commissioner's decision is not supported by substantial evidence and Defendant's objections to the Report and Recommendation are without merit.

### III. DISCUSSION

Defendant argues that the Magistrate Judge erred in finding no substantial evidence to support the ALJ's decision to discount the opinion of John W. Plyler, M.D., Plaintiff's treating neurologist, that Plaintiff was disabled and unable to work. Defendant explains that the ALJ appropriately accorded little weight to Dr. Plyler's opinion that Plaintiff was totally disabled because this conclusion contradicted (1) Dr. Plyler's own findings, (2) the findings of Dr. Plyler's associates, (3) the findings and conclusions of other examining and nonexamining physicians of record, and (4) Plaintiff's statements during the relevant time period.[2] The court finds this objection to be without merit.

There is no persuasive contradictory evidence to the opinions of Plaintiff's treating physician, Dr. Plyler, that Plaintiff is disabled. See Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974)

---

[2]Defendant states that Dr. Plyler and his associates noted that Plaintiff was alert; was oriented to person, place, date, and situation; and demonstrated intact strength, intact cranial nerves, the absence of facial asymmetry, the absence of nystagmus, the absence of tremor, the absence or lateralizing cranial nerve palsies, the absence of ataxia, a normal gait, intact reflexes, symmetric finger-to-nose testing, the absence of focal neurological deficits, clear speech, and appropriate conversation. In addition, Defendant states that Plaintiff denied sleep difficulty and TIA symptoms, and admitted to feeling better overall with an anitconvulsant medication adjustment.

(holding that the opinion and report of a treating physician is entitled to great weight, because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time). In January 2000, Dr. Plyler stated that Plaintiff "is totally and permanently disabled from her health problems which include stroke, cerebrovascular disease, epilepsy, encepalopathy, and expected neuropsychological sequela mixed disorders." Tr. 284. These findings do not directly contradict the December 11, 2000 findings of Mark T. Wagner, Ph.D., a clinical neuropsychologist, and Gordon Teichner, Ph.D., a licensed clinical psychologist, that Plaintiff had generalized seizure disorder and partial complex disorder, probably non-epileptic seizures, depressive disorder, and personality disorder. Tr. 209. Neither do they contradict the findings of Paul B. Pritchard, III, M.D., a professor of neurology, who examined Plaintiff on December 15, 2000. See Tr. 267. Although Dr. Pritchard found Plaintiff to be "alert and oriented with normal memory and language functions" and have a normal "gait, cerebellar testing, and motor exam," he also noted that she continues "to have seizures at a rate of one or two per week, which is a relative increase for her," and recommended that she take Lamictal, be considered for vagus nerve simulator, and follow-up in two months. Tr. 267-68.

In January 2000, Dr. Plyler wrote a letter to Plaintiff's employer noting that Plaintiff has seen a number of neurologists and other specialists since October 1996, and that he had tried multiple medications to alleviate Plaintiff's symptoms, with "no sustained effective response." Tr. 284. On February 27, 2002, Dr. Plyler remarked that between November 2001 and February 2002, Plaintiff had three or four seizures and possibly other minor ones. Tr. 436. An EEG report in March 2002, reflected enumerable generalized spike wave discharges and numerous electrographic seizures. Tr. 449. While under observation at the Medical College of Georgia for three days in May 2002, an

EEG revealed multiple sub-clinical seizures and three clinical seizures. Tr. 421. A clinical correlation of an EEG taken on July 12, 2002, stated that, although the EEG was "normal," the "lateralized slowing is consistent with unilateral hemispheric dysfunction due to intracarotid amobarbial." Tr. 435. Furthermore, Plaintiff's seizure activity remained at three to four complex partial seizures a week. Tr. 392. It was shortly after this, on December 10, 2002, that Joseph R. Smith, M.D., performed a craniotomy and electrode implant on Plaintiff. Tr. 394, 397-99. Accordingly, the court finds this objection to be meritless and agrees with the Magistrate Judge that there is no substantial evidence supporting the ALJ's decision to discount the opinion of Dr. Plyler that Plaintiff is disabled and unable to work.

Defendant next objects to the Magistrate Judge's finding that the ALJ did not properly consider Plaintiff's subjective complaints. Defendant explains that the Magistrate Judge found that the ALJ misinterpreted Plaintiff's testimony regarding the amount of caregiving she afforded her mother-in-law; however, Plaintiff repeatedly reported that she simultaneously cared for both her ill mother-in-law and her ill mother. Defendant states that, in addition to this, Plaintiff engaged in significant daily activities.

Plaintiff's subjective complaints included reports of four to six grand mal seizures annually, and episodes of a sensation of heat followed by ceasing speaking, disassociating, memory lapse, and staring, which lasted a few seconds and occurred up to three times weekly. Tr. 354, 359, 362-63. Plaintiff's relative statements that she was doing well, doing much better, and feeling better overall do not contradict Dr. Plyler's final conclusion that Plaintiff is "totally and permanently disabled." See Tr. 257, 272, 278, 285. See also 20 C.F.R. § 404.1527(d) (2), (4) (permitting more weight to be given to opinions of treating physicians and to opinions that are consistent with the record as a

whole). The record shows that Plaintiff was not fully aware of the nature, frequency, duration, or severity of her own seizure activity; however, this lack of understanding fails to undermine significant medical evidence and Dr. Plyler's medical opinions that Plaintiff was completely disabled and that she could not perform work at a job for which she was qualified. See 20 C.F.R. pt. 404, subpt. p, app. 2; Tr. 114, 129, 257, 270, 436. See also Tr. 257 (reporting that Plaintiff's husband noted seizure-like activities even though Plaintiff did not recognize them). Given the above, the court holds that the ALJ lacked evidence that a reasonable mind would accept as adequate to support the conclusion that Plaintiff does not suffer from a disability. See Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).

Defendant further argues that the Magistrate Judge erred in recommending that this case be reversed and remanded so that Plaintiff be issued payment of benefits. Defendant contends that, instead, if this court does not affirm the ALJ's decision, it should remand the action to the ALJ for further proceedings. The court disagrees.

The statute governing review in Social Security cases authorizes the court to reverse a decision of the ALJ with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Fourth Circuit has exercised this discretion by reversing disability denial decisions and directing awards of benefits, without requiring that those cases be remanded for further proceedings. See, e.g., Pyles v. Bowen, 849 F.2d 846, 849 (4th Cir. 1988); Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). This court finds it appropriate to reverse without remanding for a rehearing, because the record does not contain substantial evidence to support the decision denying coverage and reopening the record for more evidence would serve no useful purpose. See Breeden, 493 F.2d at 1012.

## **CONCLUSION**

Having reviewed the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and Defendant's objections, this court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons set out therein, the Commissioner's final decision in this action is **reversed** and the case is remanded to the Commissioner for purposes of awarding Plaintiff those disability benefits to which she is entitled under the law and regulations.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

July 20, 2005
Columbia, South Carolina